UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDERICK MCCLENTON,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Hon. Sally J. Berens

Case No. 1:22-cv-456

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a partially favorable final decision of the Commissioner of Social Security that denied Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act from December 31, 2012, through March 31, 2016. The parties have agreed to proceed in this Court for all further proceedings, including entry of an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Plaintiff seeks review of the Commissioner's decision that he was not disabled within the meaning of the Act before January 20, 2017.

For the following reasons, the Commissioner's decision will be **reversed and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human*

*Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker may properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff's daughter and legal guardian, Kiaira McClenton, filed an application for DIB on April 15, 2017, alleging that Plaintiff had been disabled as of December 31, 2012, due to

Huntington's disease, trans metatarsal amputation on the right foot, amputation of digits 1 and 2 on the left foot, anxiety delusional disorder, depression, and schizophrenia. (PageID.102–03, 274–75.) Plaintiff filed an application for Supplemental Security Income (SSI) the same date. (PageID.281–86.) Plaintiff's applications were denied on September 19, 2017 (PageID.119–20), and he requested a hearing by an Administrative Law Judge (ALJ). On November 9, 2017, before the ALJ hearing occurred, Plaintiff's application for SSI was approved. (PageID.155–61.) On December 18, 2018, ALJ Sara Smisek held a hearing on Plaintiff's application for DIB. On February 2, 2019, ALJ Smisek issued a partially favorable decision finding that Plaintiff was not disabled prior to January 20, 2017, but became disabled on that date. (PageID.125–32.) On September 22, 2020, the Appeals Council granted Plaintiff's request for review and remanded the matter to the ALJ for further findings. (PageID.138–43.)

On December 21, 2020, ALJ Smisek held a second hearing. (PageID.54–79.) On February 9, 2021, she issued a partially favorable decision, finding that although Plaintiff was not disabled prior to his date last insured (DLI), he became disabled on January 20, 2017. (PageID.40–48.) The Appeals Council denied Plaintiff's request for review on April 13, 2022. (PageID.24–26.) Therefore, ALJ Smisek's February 9, 2021 ruling became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007).

Plaintiff initiated this civil action for judicial review on May 20, 2022.

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1]. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

---

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

The ALJ determined that Plaintiff met the insured status requirements of the Act through March 31, 2016, his DLI, and had not engaged in substantial gainful activity since his alleged onset date of December 31, 2012. At step two, the ALJ determined that Plaintiff did not have a medically determinable impairment prior to January 20, 2017, but had a medically determinable impairment as of that date, when he was found wandering the streets of Grand Rapids and hospitalized with visual signs of frostbite. (PageID.43, 45, 787–94.) Records from a neuropsychological examination during that admission reflect that Plaintiff exhibited impaired cognitive performance, including an inability to learn new information in the first place, as well as diminished insight into the dangers of frostbite, which ultimately resulted in a partial amputation of his right foot and amputation of two toes on his left foot. (PageID.879.) Plaintiff could not provide a reasoned response as to what he might do to prevent frostbite in the future, was fixed on returning to his "work" riding his bicycle and collecting bottles and cans, and displayed a "somewhat paranoid ideation" regarding the persons who interrupted his "work" by bringing him to the hospital. (PageID.879–80.) By March of 2017, Plaintiff was diagnosed with Huntington's disease. (PageID.1261.) The ALJ found that the evidence did not establish a medically determinable impairment prior to January 20, 2017:

> The record does not contain evidence to support medically determinable impairments until well after his date last insured and through the established onset date (Exhibit 1F). In January 2015, the claimant received emergency medical treatment after being hit by a care [sic] while he was riding his bicycle down the freeway (Exhibit 9F/5). A physical examination noted the claimant as neurologically intact, he was able to answer questions appropriately, follow commands, but was unable to remember any part of the accident (Exhibit 9F/6). A head CT showed a blowout fracture of the lamina papyracea of the left orbit and extracranial soft-tissue hematoma on the left. Additional imaging showed left orbital fracture and right lower lobe pulmonary embolism (Exhibit 9F/13). While the claimant sustained acute injuries, the record does not reflect they lasted for more than 12 months, nor does the record reflect follow up or additional direct treatment until January 2017. While the claimant's representative alleges the claimant's act of riding his bicycle on a freeway supports disability and adds that because the

5

> clamant did not know the year or month following an injury where he hit his head on a windshield of a moving car, the undersigned disagrees. The claimant sustained an acute injury, confirmed by imaging. The claimant was able to remember his name and that he was in the hospital, was able to answer questions appropriately and was not observed as having other remarkable behaviors during his hospital stay to warrant further testing. Thus, the undersigned finds the record does not support a medically determinable impairment prior to January 20, 2017.
>
> The claimant's representative tried to establish a medically determinable impairment through testimony with the claimant's guardian based on approximately one week intermittent conversations in 2015. The claimant's guardian, who is not an acceptable medical source, testified to her father's slurred speech during conversations in 2015 and related to it similar observations from family members with Huntington's disease. However, she acknowledges there was no treatment and no diagnosis until two years later in 2017. Accordingly, there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairments through January 20, 2017.

(PageID.43–44.) The ALJ also found that the medical opinions and prior administrative findings failed to show that Plaintiff had a medically determinable impairment prior to January 20 2017.

(PageID.44.) Regarding the June 22, 2017 opinion of treating source of Barbara Pickut, M.D., the ALJ wrote:

> In June 2017, a treating source, Barbara Pickut, M.D., noted though the claimant's Huntington's disease was only recently confirmed by genetic testing, it was her medical opinion the claimant had this diagnosis and the subsequent cognitive and physical symptoms "for much longer" (Exhibit 1F/1). I do not find this opinion persuasive as her assessment that the claimant's condition has been present for "much longer" than when he initially presented to the emergency department in January 2017, is vague and does not provide an specific, accurate, or reliable time period supported by medical evidence. The Social Security regulations require objective medical signs or laboratory findings from an acceptable medical source in order to establish an impairment. Thus, third party observations, while they can be helpful, must also be corroborated by medical findings from an acceptable medical source. The first documented medical finding to support the claimant's Huntington's disease diagnosis is from when he was brought [sic] the hospital on January 20, 2017. Accordingly, I do not find Dr. Pickut's opinion persuasive as it does not provide specific limitations, objective findings to support another date for an accurate diagnosis, and is quite vague as to a date such signs and symptoms first started appearing or when the claimant's condition increased in severity.

(PageID.44–45.)

6

At step three, the ALJ determined that Plaintiff met the criteria of listing 11.17 found in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, as of January 20, 2017, based on his impairment of Huntington's disease. (PageID.45–47.) The ALJ thus found that Plaintiff was not under a disability prior to his DLI. (PageID.47.)

## **DISCUSSION**

Plaintiff raises two issues in his appeal: (1) the ALJ committed reversible error by not properly weighing the medical evidence, especially the opinion of Plaintiff's treating physician; and (2) the ALJ committed reversible error by failing to give proper weight to the lay witness. (ECF No. 12 at PageID.1530.) Both issues are considered together.

Citing the symptoms of adult-onset Huntington's disease listed on the Johns Hopkins University website at hopkinsmedicine.org, as well as hearing testimony from his daughter/legal guardian, Ms. McClenton, detailing Plaintiff's slide from productive factory worker into homelessness and an obsession with collecting pop cans long before his 2017 hospitalization (PageID.64–66), Plaintiff contends that "there would appear to be no doubt that Plaintiff's [Huntington's disease] had destroyed his mind long before" Plaintiff illogically rode his bicycle on U.S. 131 (most likely in pursuit of pop cans) in 2015, when he was struck by a vehicle. (ECF No. 12 at PageID.1530–31.) According to the Johns Hopkins website, Huntington's is a hereditary neurodegenerative disease that usually onsets in mid-life and gradually worsens in stages over time, ultimately resulting in confinement and the need for total care at home or in a hospital or nursing home. The disease is characterized by a movement disorder, dementia, and psychiatric disturbances, with additional characteristics, including personality changes.[2]

---

[2] *See* https://www.hopkinsmedicine.org/psychiatry/specialty_areas/huntingtons_disease/patient_family_resources/education_whatis.html (last visited Jan. 8, 2013).

As set forth above, the ALJ determined that Plaintiff did not have a medically determinable impairment prior to January 20, 2017—and thus prior to his DLI—because Ms. McClenton was not an acceptable medical source and her testimony regarding her observations in 2015 and prior to that time did not constitute medical signs or laboratory findings that could substantiate the existence of a medically determinable impairment. Similarly, the ALJ found that Dr. Pickut's opinion, alone, could not establish a medically determinable impairment at an earlier date. (PageID.43–45.) These conclusions were correct, insofar as they were in line with applicable regulations establishing that a claimant's impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521; *see also* 20 C.F.R. § 404.1502(f) (defining objective medical evidence as "signs, laboratory findings, or both"). The claimant must provide "objective evidence from an acceptable medical source." *Id.* The claimant's "statement of symptoms, a diagnosis, or a medical opinion," will not suffice. *Id.* While evidence from "other sources" may provide insight into the severity of the claimant's impairment and how it affects the claimant's ability to function, it cannot establish the existence of a "medically determinable impairment." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2.

Notwithstanding the foregoing, the ALJ's analysis went awry because she viewed the issue through the wrong lens. That is, because Plaintiff had a medically determinable impairment as of January 2017, the pertinent inquiry was whether the impairment had existed about ten months earlier, in March 2016, before Plaintiff's DLI. The Fourth Circuit's decision in *Bird v. Commissioner of Social Security Administration*, 699 F.3d 337 (4th Cir. 2012), illustrates the point. The claimant in *Bird* had served in the Marine Corps from 1967 to 1970. Following his discharge

8

from the service he had been employed in various capacities but changed jobs several times due to difficulty in interacting with people. As of 2001, the plaintiff and his wife operated a mobile home park but sold the business due to repeated disagreements with tenants requiring law enforcement intervention. The plaintiff subsequently was diagnosed with post-traumatic stress disorder (PTSD) in 2007 and awarded veterans benefits. The plaintiff applied for DIB in December 2006, alleging that he had become disabled several years before his DLI of March 31, 2005. The plaintiff had no medical records pertaining to his PTSD prior to his DLI because he had not received treatment before that time. The ALJ found that the plaintiff suffered from PTSD prior to his DLI, but concluded that it was not severe and thus not disabling, in part, due to the lack of medical evidence prior to the DLI. The ALJ further reasoned that the Veteran's Administration disability rating decision was effective 15 months after the DLI, and gave a psychologist's report from 2007 little weight because it did not reflect the plaintiff's pre-DLI condition. *Id.* at 340. The Fourth Circuit reversed, noting that "[m]edical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." *Id.* The court cited its prior decision in *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969), which held that an agency examiner erred by failing to give retrospective application to evidence created between six and seven years after the claimant's DLI because the evidence could have been "'reflective of a possible earlier and progressive degeneration.'" *Id.* at 341 (quoting *Moore*, 418 F.2d at 1226). The court observed that "lay observations of a claimant's condition during the relevant time period" can provide the requisite "linkage" to support "retrospective consideration of medical evidence." *Id.*

Here, Plaintiff suffers from a hereditary neurodegenerative disease that was formally diagnosed only after—but within a year following—his DLI. In addition, Plaintiff presented

9

testimony from his daughter corroborating the presence of Huntington's symptoms well before Plaintiff's DLI, including a personality change and aberrant behavior, along with slurred speech similar to that of a family member diagnosed with Huntington's disease, a decrease in communication activity, and tic-like behavior. (PageID.67–71.) Such testimony served to provide the "linkage" between the 2017 medical findings and Plaintiff's condition prior to his DLI. *See id.* at 342 (noting that "retrospective consideration of medical evidence is especially appropriate when corroborated by lay evidence"). The ALJ thus erred in rejecting Ms. McClenton's testimony concerning her observations of her father's symptoms on the basis that she was not an acceptable medical source. Instead, the ALJ should have focused her inquiry on whether Ms. McClenton's testimony—viewed in light of the degenerative nature of Hunting's disease—established the requisite "linkage" to the presence of Hunting's disease symptoms during the relevant period. Plaintiff cites *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048 (6th Cir. 1983), for the proposition that the ALJ erred in dismissing Ms. McClenton's testimony out of hand. Factually, *Lashley* is distinguishable, but the general principle holds true: the ALJ must give proper weight to lay testimony where it is consistent with medical evidence in the record. *Id.* at 1054.

As for Dr. Pickut's opinion, as an initial matter, the Court notes that Plaintiffs' arguments that the ALJ erred in giving it little weight, failed to comply with the "good reasons" requirement, and ran afoul of *Gayheart v. Commissioner of Social Security*, 710 F.3d 365 (6th Cir. 2013), are irrelevant and, therefore, without merit. Because Plaintiff filed his application after March 27, 2017, the ALJ was required to evaluate the persuasiveness of the medical opinions and prior administrative medical findings pursuant to 20 C.F.R. § 404.1520c(a). Thus, the former "treating physician" rule, "good reasons" requirement, and the cited portion of *Gayheart* were not applicable to Plaintiff's case. *See Melissa W. v. Comm'r of Soc. Sec.*, No. 1:21-cv-487, 20222 WL 3154134,

at *3 (S.D. Ohio Aug. 8, 2022) ("The new regulations also alter how the ALJ articulates his consideration of medical opinions. While the ALJ must articulate consideration of all medical opinions, the new regulations no longer mandate the "controlling weight" analysis or the "good reasons" standard in weighing a treating source opinion."); *Gregory R. v. Comm'r of Soc. Sec.*, No. 2:21-cv-1817, at * 2 (S.D. Ohio May 11, 2022) ("Given *Gayheart* was decided under the old regulatory framework, Plaintiff's reliance on it to argue the ALJ erred in considering Dr. Shrek's medical opinions is not persuasive.").

Nonetheless, the ALJ's evaluation of Dr. Pickut's opinion was not supported by substantial evidence. To be sure, Dr. Pickut's opinion could not, alone, establish a medically determinable impairment, but she had the 2017 findings as the foundation for her opinion. The ALJ found Dr. Pickut's opinion that Huntington's disease and associated cognitive and physical symptoms were present "for much longer" than the March 2017 diagnosis "vague" as to a "specific, accurate, or reliable time period supported by medical evidence." The ALJ further determined that Dr. Pickut could not rely on Ms. McClenton's observations because she was not an acceptable medical source. (PageID.44–45.) In light of the foregoing discussion, however, this conclusion was error. Dr. Pickut, being knowledgeable about Huntington's disease and its associated symptoms, was entitled to rely on information from Ms. McClenton as the "linkage" to determine when symptoms of the disease first became evident. Moreover, Ms. McClenton's testimony provides context to Dr. Pickut's statement "for much longer," thus providing a basis to determine that Plaintiff's Huntington's symptoms were present within the relevant period.

Accordingly, the Court concludes that remand is warranted because the ALJ erred both in rejecting Ms. McClenton's testimony and in evaluating Dr. Pickut's opinion.

## **CONCLUSION**

For the reasons stated above, the Commissioner's decision is **reversed and remanded** for further factual findings consistent with this Opinion pursuant to sentence four of 42 U.S.C. § 405(g). An order consistent with this opinion will enter.

Dated: January 11, 2023                                              /s/ Sally J. Berens
                                                                                                              SALLY J. BERENS
                                                                                                              U.S. Magistrate Judge